IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES ex rel. YECHIEL ABRAMOV (#B-71340), | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) ) | Case No. 05 C 4795 |
| NEDRA CHANDLER, Warden, Dixon Correctional Center, | ) ) ) | |
| Respondent. | ) ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Petitioner Yechiel Abramov, by counsel, filed the present petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). For the reasons discussed below, the Court denies Abramov's petition.

## BACKGROUND

Abramov does not present clear and convincing evidence challenging the statement of facts set forth in the Illinois Appellate Court's opinions affirming the judgments of the Circuit Court of Lake County, and thus the Court presumes those facts are correct for purposes of its habeas review. *See* 28 U.S.C. § 2254(e)(1); *Whitman v. Bartow,* 434 F.3d 968, 969 (7th Cir. 2006). The Court, therefore, adopts the underlying facts as set forth by the Illinois Appellate Court, Second Judicial District, in Abramov's direct and post-conviction appeals. *See People v. Abramov,* No. 2-95-1401 (2d Dist. Apr. 14, 1997) (unpublished order) *People v. Abramov,* No. 2-99-0424 (2d Dist. Apr. 24, 2001) (unpublished order); *People v. Abramov*, No. 2-03-0540 (2d Dist. May 13, 2004) (unpublished order). The Court starts with a brief recounting of the facts as

determined by the Illinois Appellate Court when it resolved Abramov's second direct appeal. *See Easley v. Frey,* 433 F.3d 969, 970 (7th Cir. 2006).

## I. Factual Background

On April 12, 1995, Lamar Jones and Leroy Solti broke into Abramov's home located at 212 Killarney Road in Grayslake, Illinois. Abramov and his wife had moved into this home approximately five weeks earlier. At the time Jones and Solti broke into the home, Abramov's wife, Angela, and son were present while Abramov was at work. Jones and Solti stabbed and shot Angela. The men were apprehended shortly thereafter and told the police that Abramov had hired them to kill his wife.

At trial, Solti testified that he first became acquainted with Abramov when Solti took his car in for repairs at the automotive shop where Abramov worked. After receiving an estimate for his car repairs, Solti told Abramov that he did not have enough money to pay for the repairs. Abramov told Solti not to worry because he had a job for him to do. Specifically, Abramov asked Solti to kill his wife, Angela.

Two other witnesses – Nathan Weaver and Eric Bell – testified at trial that Abramov had previously attempted to hire them to kill Angela. At that time, Abramov and his family lived in an apartment on Cicero Avenue in Chicago, Illinois. Although neither Weaver nor Bell intended to kill Angela, they let Abramov believe that they planned to kill her because Abramov paid them money. At one point, Weaver and Bell staged a robbery with Abramov's cooperation where they said they intended to kill Angela. They did not kill Angela, however, but took Abramov's money instead.

## II. Procedural Background

Following a bench trial in the Circuit Court of Lake County, Illinois, the state court judge found Abramov guilty of three counts of solicitation of murder for hire and one count each of attempted first-degree murder, home invasion, armed violence, aggravated battery with a firearm, and conspiracy to commit first-degree murder. (R. 22-1, Respondent's Rule 5 Exs., Ex. C.) The Circuit Court then sentenced Abramov to concurrent terms of 35 years for each count of solicitation of murder for hire, 30 years for attempted first-degree murder, 30 years for aggravated battery with a firearm, and 15 years for conspiracy to commit first-degree murder. (*Id.*, Ex. A.)

Abramov appealed his conviction and sentence to the Illinois Appellate Court, Second District. On April 14, 1997, the Illinois Appellate Court reversed and remanded Abramov's case for a new trial due to constitutionally ineffective assistance of counsel. (*Id.*, Ex. C.) The State then filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court that the court denied on October 1, 1997. (*Id.*, Exs. D, E.)

After the second bench trial before the Circuit Court of Lake County, the state court judge convicted Abramov of one count each of solicitation for murder for hire, attempted first-degree murder, and aggravated battery with a firearm. (*Id.*, Ex. H.) The Circuit Court then sentenced Abramov to two concurrent 29-year terms of imprisonment for solicitation of murder for hire and attempted first degree murder, and also sentenced Abramov to a consecutive 6-year term for aggravated battery for a total of 35 years' imprisonment. (*Id.*)

Thereafter, Abramov appealed his conviction and sentence to the Illinois Appellate Court, Second District, raising the following issues: (1) the State failed to prove him guilty beyond a reasonable doubt; (2) venue was improper for one count of the indictment; (3) the trial

court erred in denying his motion to dismiss and motion *in limine* based on the State's discovery violations; and (4) the trial court improperly granted the State's motion *in limine* barring cross-examination of cooperating witness Solti concerning his conversation with his attorney based on the attorney-client privilege. (*Id.*, Exs. F, H.) On April 24, 2001, the Illinois Appellate Court, Second District, affirmed the conviction and sentence. (*Id.*, Ex. H.)

Abramov then filed a PLA to the Illinois Supreme Court, raising the following claims: (1) the State failed to prove him guilty beyond a reasonable doubt; (2) the trial court erred in denying his motion to dismiss and motion *in limine* based on the State's discovery violations; and (3) the trial court improperly granted the State's motion *in limine* barring cross-examination of Solti about his conversation with his attorney based on the attorney-client privilege. (*Id.*, Ex. I.) On October 3, 2001, the Illinois Supreme Court denied Abramov's PLA. (*Id.*, Ex. J.)

On April 8, 2002, Abramov filed a petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.*, and on February 28, 2003, Abramov filed an amended post-conviction petition. In his amended petition, Abramov raised the following arguments: (1) the prosecution of his second trial was improper because it was conducted, in part, by an assistant Illinois appellate prosecutor; (2) ineffective assistance of trial and appellate counsel; (3) the trial court erred in imposing a consecutive sentence on his conviction for aggravated battery with a firearm; (4) the trial court improperly shifted the burden of proof to Abramov; and (5) the trial court improperly granted the State's motion *in limine* barring cross-examination of Solti about his conversation with his attorney based on the attorney-client privilege. (*Id.,* Ex. K.) On April 24, 2003, the Circuit Court of Lake County dismissed Abramov's post-conviction petition. (*Id.*, Ex. L.)

Abramov appealed the dismissal of his post-conviction petition to the Illinois Appellate Court, Second District, raising the following claims: (1) ineffective assistance of trial and appellate counsel; (2) the post-conviction court erred in failing to grant relief where law enforcement officials either lost or destroyed tape-recorded conversations; and (3) the post-conviction court erred in perpetuating the exclusion of evidence regarding conversations between Solti and his attorney. (*Id.*, Ex. M.) On May 13, 2004, the Illinois Appellate Court, Second District, affirmed the trial court's dismissal of Abramov's post-conviction petition. (*Id.*, Ex. O.)

Abramov then filed a PLA to the Illinois Supreme Court asserting these claims: (1) the prosecution of his second trial was improper because it was conducted, in part, by an assistant Illinois appellate prosecutor; (2) the post-conviction court erred in failing to grant relief where law enforcement officials either lost or destroyed tape-recorded conversations; and (3) the post-conviction court erred in perpetuating the exclusion of evidence regarding conversations between Solti and his attorney. (*Id.*, Ex. P.) On October 6, 2004, the Illinois Supreme Court denied Abramov's PLA. (*Id.*, Ex. Q.)

On August 19, 2005, Abramov filed the present habeas petition pursuant to 28 U.S.C. § 2254(d)(1) raising the following constitutional claims: (1) the trial court violated his rights under the Confrontation Clause of the Sixth Amendment when the court granted the State's motion *in limine* to bar cross-examination of Solti concerning his conversation with his attorney; (2) the State did not prove him guilty beyond a reasonable doubt and the trial court improperly shifted the burden of proof to Abramov; and (3) the State violated his rights to due process, to a fair trial, and to confront witnesses when the State lost or destroyed tape recordings of telephone

conversations between Abramov and law enforcement officers, but allowed the police officers to testify about the content of the tape recordings.  (R. 1-1, Petition for Writ of Habeas Corpus.)

<u>**LEGAL STANDARDS**</u>

## I.  Habeas Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a court cannot grant habeas relief unless the state court's decision was contrary to, or an unreasonable application of law clearly established by the Supreme Court.  *Dunlap v. Hepp,* 436 F.3d 739, 741 (7th Cir. 2006); *see also Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours."  *Id.* at 405.

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case.  *Id.* at 407.  "This reasonableness determination is quite deferential, such that a state decision may stand as long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect."  *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005); *see also Rompilla v. Beard,* 545 U.S. 374, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005) (state court decision must be objectively unreasonable).  In other words, "[e]ven if the state court erroneously applied federal law, [courts] may only grant the writ if the decision was objectively unreasonable."  *Walker v. Litscher*, 421 F.3d 549, 554 (7th

Cir. 2005).

To be considered "unreasonable," a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *Woods v. McBride,* 430 F.3d 813, 816-17 (7th Cir. 2005) (quoting *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir. 2002)); *see also Dunlap,* 436 F.3d at 745 (to be reasonable, state court decision must be minimally consistent with facts and circumstances of case); *Hubanks v. Frank*, 392 F.3d 926, 929 (7th Cir. 2004) (reasonable state court decision one of several equally plausible outcomes).

## II.    Procedural Default

Before bringing a habeas claim in federal court, the petitioner must exhaust all remedies available to him in state court. *Bintz v. Bertrand,* 403 F.3d 859, 863 (7th Cir. 2005). Specifically, the "petitioner must establish that he fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge." *Id.*; *see also O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Fair presentment requires the petitioner to set forth the operative facts and controlling legal principles for each of his claims. *Bintz,* 403 F.3d at 863. "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Lewis v. Sternes,* 390 F.3d 1019, 1026 (7th Cir. 2004). In addition, a habeas claim is procedurally defaulted when the state court did not address the petitioner's federal claim because the petitioner failed to meet independent and adequate state procedural requirements. *Stewart v. Smith,* 536 U.S. 856, 860-61, 122 S.Ct. 2578, 2581,153 L.Ed.2d 762 (2002); *see also Coleman v. Thompson,* 501 U.S. 729, 750, 111 S.Ct. 2546, 2565,

115 L.Ed.2d 640 (1991).

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice as a result of the alleged violation of federal law or by showing that the Court's failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 750. The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). A fundamental miscarriage of justice occurs when a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496.

## ANALYSIS

### I.     Confrontation Clause Claim

#### A.     Procedural Default

Respondent contends that Abramov's habeas claim based on the Confrontation Clause claim is procedurally defaulted because the Illinois Appellate Court rejected this claim based on both waiver and a merits determination. Respondent thus argues that the Illinois Appellate Court based its decision on an independent and adequate state law ground. *See Gomez v. Jaimet,* 350 F.3d 673, 678 (7th Cir. 2003) (under Illinois law, waiver operates as independent and adequate state ground barring federal habeas review). In general, federal courts cannot review questions of federal law if the state court decision rests on a state procedural ground that is independent of the federal question and adequate to support the judgment. *See Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). In other words:

When the last state court to issue an opinion on a petitioner's federal claim has resolved that claim on an adequate and independent state ground, federal habeas review of the claim is foreclosed. Typically this occurs when the petitioner failed to comply with a state procedural rule and the state court relied on that procedural default to refrain from reaching the merits of the federal claim.

*Miranda v. Leibach*, 394 F.3d 984, 99-92 (7th Cir. 2005) (internal citation omitted).

When a state appellate court bases its decision on both the petitioner's procedural default and a review of the merits a "petitioner's procedural default will bar federal habeas review only if the state court actually relied on that default as an independent basis for its decision." *Hampton v. Leibach,* 347 F.3d 219, 242 (7th Cir. 2003) (citing *Harris v. Reed*, 489 U.S. at 261-62)). Thus, under the circumstances, the Court must determine whether the Illinois Appellate Court's decision primarily relied on its merits determination, the procedural default, or a combination of both. *See Farmer v. Litscher,* 303 F.3d 840, 846 (7th Cir. 2002).

Although the Illinois Appellate Court discussed Abramov's waiver of his Confrontation Clause argument, the court spent the majority of its decision giving a detailed merits analysis of Abramov's claim. *See People v. Abramov,* No. 2-99-0424, at *17-20. In other words, the appellate court did not expressly decide this claim based on waiver alone. *See Harding v. Sternes,* 380 F.3d 1034, 1043-44 (7th Cir. 2004). Under these circumstances, the Court would be hard-pressed to conclude that Abramov's claim is procedurally defaulted. The Court turns to the merits of Abramov's Confrontation Clause claim.

### B.    Merits Determination

#### 1.    Facts

Abramov's Confrontation Clause claim is based on the following facts as determined by the Illinois Appellate Court in his second direct appeal. Prior to Abramov's first trial, Solti

requested that attorney Robert Ritacca visit him at the Lake County Jail. Solti wanted Ritacca to evaluate the circumstances surrounding his guilty plea regarding the attack on Abramov's wife to determine if Ritacca could negotiate a more favorable plea agreement. Solti told Ritacca a version of the facts that differed substantially from what he had stated at trial. Ritacca testified that Solti asked him to deliver a letter to Lamar Jones, his co-defendant. Ritacca declined to do so and Solti terminated the visit. Subsequently, Ritacca communicated these events to Abramov's first attorney. *See People v. Abramov,* No. 2-99-0424, at *15-16.

The State filed a motion *in limine* seeking to bar Abramov from cross-examining Solti regarding this conversation based on the attorney-client privilege. The trial court concluded that the State had fulfilled its burden in showing that the attorney-client privilege attached to the conversation, and granted the State's motion. In the course of its ruling, the trial court found that Abramov had not established that the crime-fraud exception vitiated the attorney-client privilege, and that the right to confront one's accusers did not trump Solti's attorney-client privilege. *See id.,* No. 2-99-0424, at *15-20.

### 2. The Right to Confront Witnesses

The Sixth Amendment to the United States Constitution guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S. CONST., amend. VI; *Dunlap v. Hepp,* 436 F.3d 739, 741 (7th Cir. 2006). This "confrontation" means more than confronting witnesses physically – the primary interest secured by the Confrontation Clause is the right of cross-examination. *Davis v. Alaska,* 415 U.S. 308, 315-16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Dunlap,* 436 F.3d at 741. Nonetheless, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such

cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986). "[T]he Confrontation Clause guarantees an ***opportunity*** for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (per curiam) (emphasis in original); *see also Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973) (confrontation and cross-examination rights "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process").

### 3. Attorney-Client Privilege

Here, Abramov contends that the State's successful motion *in limine* based on the attorney-client privilege precluded him from cross-examining Solti concerning Solti's discussion with Ritacca at the Lake County Jail prior to Abramov's first bench trial. Abramov bears the burden of establishing that the state court applied federal constitutional law as determined by the United States Supreme Court to the facts of his case in an objectively unreasonable manner. *See Woodford v. Visciotti,* 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

First, Abramov asserts that the Illinois Appellate Court's decision was an unreasonable application of clearly established Supreme Court law when it determined that the attorney-client privilege trumped defendant's constitutional right to confront his accusers. When analyzing this claim, the Illinois Appellate Court determined:

> [T]he right to confront one's accusers does not take precedence over the attorney-
> client privilege. Like the right to confrontation, the attorney-client privilege is

designed "to promote the judicial process itself." Thus, unlike some privileges deemed to be of secondary importance, the attorney-client privilege does not give way to a defendant's right under the confrontation clause.

*People v. Abramov,* No. 2-99-0424, at *18 (internal citations omitted).

Abramov admits that the "United States Supreme Court has not yet addressed the precise issue raised here – a clash between a criminal defendant's Constitutional rights and an assertion of the attorney-client privilege." (R. 2-1, Memo. in Support of Section 2254 Petition at 39.) Instead, Abramov relies on Circuit Court precedent, including the Seventh Circuit's decision in *United States v. Rainone,* 32 F.3d 1203, 1206 (7th Cir. 1994), in which the court stated:

> Evidentiary privileges are not absolute, however. Even privileges recognized when the Constitution was written can be trumped by constitutional rights, such as the right of confrontation conferred by the Sixth Amendment and interpreted to include the right of cross-examination. *Olden v. Kentucky,* 488 U.S. 227, 231, 109 S.Ct. 480, 482, 102 L.Ed.2d 513 (1988) (per curiam); *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); John W. Strong, McCormick on Evidence § 74.2, at pp. 279-81 (4th ed. 1992). Even the attorney-client privilege, therefore, hallowed as it is, yet not found in the Constitution, might have to yield in a particular case if the right of confrontation, whether in its aspect as the right of cross-examination or in some other aspect, would be violated by enforcing the privilege. So at least dicta in two cases intimate. *United States ex rel. Blackwell v. Franzen,* 688 F.2d 496, 501 (7th Cir. 1982); *Jenkins v. Wainwright,* 763 F.2d 1390, 1392-93 (11th Cir. 1985).

Not only does the Seventh Circuit admittedly rely on dicta in making its determination, but under the AEDPA, the Court's focus is whether the Illinois Appellate Court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, ***clearly established Federal law, as determined by the Supreme Court of the United States***." 28 U.S.C. § 2254(d)(1) (emphasis added). Therefore, Abramov's reliance on the *Rainone* decision cannot serve as the basis for a finding that the Illinois Appellate Court's decision involved an unreasonable application of clearly established federal law as determined by the Supreme Court.

*See Sweeney v. Carter,* 361 F.3d 327, 333-34 (7ᵗʰ Cir. 2004); *Young v. Walls,* 311 F.3d 846, 849 (7ᵗʰ Cir. 2002).

### 4.     The Crime-Fraud Exception

Next, Abramov argues that Illinois Appellate Court's ruling that he did not establish the crime-fraud exception to the attorney-client privilege was an unreasonable application of clearly established federal law as determined by the Supreme Court. Abramov again fails to identify clearly established Supreme Court precedent in support of this argument.[1]  *See Yancey v. Gilmore,* 113 F.3d 104, 108 (7ᵗʰ Cir. 1997) (because petitioner cannot point to clearly established Supreme Court precedent for his argument, he does not meet the standard for relief imposed by Section 2254(d)(1)).

Nevertheless, in analyzing Abramov's crime-fraud exception argument, the Illinois Appellate Court stated the following:

> Defendant also argues that the crime-fraud exception applies in this case and renders the conversation between Solti and Ritacca unprivileged. According to defendant, Solti was seeking Ritacca's services in order to seek a better plea agreement by perjuring himself. The party asserting this exception bears the burden of proving its applicability. The trial court concluded that defendant had not met this burden. Prior to ruling the exception did not apply, the court heard testimony from Ritacca, which it described as "all over the page." For example, Ritacca testified that he was unsure at [sic] to whether Solti had given a statement to the police, how Solti's testimony would differ, whether Solti was represented at the time, and how large Solti's police report was. Given the quality of Ritacca's testimony, we agree with the trial court that defendant failed to carry its burden with respect to this exception.

*People v. Abramov,* No. 2-99-0424, at *17-18 (internal citations omitted).

---

[1]  Abramov does, however, outline the contours of the Confrontation Clause by citing *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) and *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), among other cases.

In attacking the Illinois court's crime-fraud exception analysis, Abramov argues that although Ritacca could not recall certain, irrelevant details of his conversation with Solti, Ritacca was clear and unwavering about the facts that pertained to the attorney-client privilege. (R. 2-1, Memo. in Support of Section 2254 Petition at 27.) Abramov then gives his version of the facts citing to the trial court record and argues how counsel would have impeached Solti based on the discussion with Ritacca and concludes that the Illinois Appellate Court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *See* 28 U.S.C. § 2254(d)(2). In essence, it appears that Abramov is challenging the state court's factual determinations. *See, e.g., Miller-El v. Dretke,* 545 U.S. 231, 125 S.Ct. 2317, 2325, 162 L.Ed.2d 196 (2005). Abramov, however, does not attempt to rebut the presumption that the state court's factual findings are correct. *See* 28 U.S.C. § 2254(e)(1); *Ruvalcaba v. Chandler,* 416 F.3d 555, 559-60 (7th Cir. 2005) (petitioner must offer clear and convincing evidence to rebut statutory presumption that state court's factual findings are correct).[2] Without more, Abramov's crime-fraud exception argument fails. *See Doherty v. City of Chicago,* 75 F.3d 318, 324 (7th Cir. 1996) ("it is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.") (citation omitted).

Abramov's Confrontation Clause arguments thus fail because Abramov did not support his arguments with clearly established federal law as determined by the Supreme Court of the United States. *See* 28 U.S.C. §§ 2254(d)(1). He further failed to offer clear and convincing evidence to rebut the presumption that the state court's factual findings were correct. *See* 28

---

[2] Oddly enough, in his reply brief, Abramov asserts that he is not challenging the state court's factual findings because the court's factual findings were irrelevant to whether the attorney-client privilege applied. (R. 27-1, Reply Mem. of Law in Resp. to State's Answer at 11).

U.S.C. §§ 2254(e)(1).

## II.     Sufficiency of the Evidence

Next, Abramov contends that the evidence presented at trial was legally insufficient to support his convictions.[3]  In general, a defendant who challenges the sufficiency of the evidence faces a nearly insurmountable task.  *See United States v. Gougis,* 432 F.3d 735, 744 (7th Cir. 2005).  When assessing a sufficiency of the evidence claim, the reviewing court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, ***any*** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original).  The standard under *Jackson* "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Id.*  Courts defer to a fact finder's credibility determinations and will overturn verdicts only if "the record contains no evidence, regardless of how it is weighed, upon which a rational trier of fact could find guilt beyond a reasonable doubt."  *United States v. Cummings,* 395 F.3d 392, 397 (7th Cir. 2005) (citation omitted); *see also United States v. Kapp,* 419 F.3d 666, 668, 672 (7th Cir. 2005) ("In short, we must determine 'whether the fact finder's take on the evidence was wholly irrational.'") (citation omitted).

Here, Abramov admits that the State's four chief witnesses – Solti, Jones, Weaver, and Bell – testified that Abramov personally solicited them to kill his wife.  Nevertheless, Abramov argues that the evidence is legally insufficient because these witnesses were impeached, biased,

---

[3]  In his habeas petition, Abramov also argues that the trial court improperly shifted the burden of proof to him.  Abramov, however, does not develop this argument in his legal memoranda, and therefore, he has waived it.  *See Estate of Moreland v. Dieter,* 395 F.3d 747, 759 (7th Cir. 2005) (perfunctory and undeveloped arguments are waived).

and testified inconsistently. Abramov argues that the trial judge could not have concluded that these individuals were credible or that their testimony was truthful. Based on this argument, Abramov asserts that the Illinois Appellate Court's decision was an unreasonable application of *Jackson*.

In analyzing this claim, the Illinois Appellate Court first discussed Abramov's arguments concerning the impeachment of the State's witnesses:

> Defendant asserts that the testimony of Jones, Solti, Weaver, and Bell is not worthy of belief. Defendant first notes that each was a convicted felon and admitted gangmember. Furthermore, Solti and Jones testified as part of a plea agreement, while Weaver and Bell were never prosecuted for the staged robbery of defendant and his wife. The trial court was, however, presented with this potentially impeaching information, and it was the trial court's role to weigh this evidence and determine defendant's guilt or innocence. We will not substitute our judgment for that of the trial court, which had the opportunity to observe these witnesses' testimony first hand.

*People v. Abramov,* No. 2-99-0424, at *4 (internal citations omitted).

The Illinois Appellate Court then discussed in detail Abramov's argument concerning the witnesses' inconsistent statements:

> These inconsistencies undoubtedly exist; however, defendant's argument ignores other evidence which corroborates the testimony of these witnesses. Weaver, Bell, Solti, and Jones were aware of various details of defendant's life which would have been difficult, if not impossible, for them to learn from any source other than defendant. First, Weaver testified that defendant told him Angela always wore a pair of diamond earrings. Angela confirmed this fact during her testimony. Second, both Weaver and Bell testified that defendant instructed them to follow Angela and her mother to a mall and kill her there. Defendant told them that his mother-in-law drove a gray car. Angela's mother testified that she drove a gray car at that time. Both testified that they would regularly go to a mall together when Angela's mother came over on one of her regular afternoon visits. Third, Campbell [Bell's girlfriend] described defendant's work uniform and picked him out of a photographic lineup, despite defendant's assertion that he never met her.... Weaver and Bell testified that prior to the staged robbery where they were to kill Angela, defendant showed them that he was carrying a large sum of money. During the staged robbery, after the

defendant produced some money, Weaver demanded more, indicating he knew defendant was carrying more money than he initially produced. Furthermore, Angela testified that it was not customary for defendant to carry a lot of money, however, on that occasion, he took a lot of money from the apartment with him. Ninth, Bell and Weaver both knew defendant's new home in Grayslake was near the railroad tracks. Bell's testimony that this house was the second one on the left from a stop sign was confirmed by Angela.... Twelfth, Solti testified that defendant showed him a little over $1,000 in cash the night before the attack. Defendant testified that he closed a bank account and withdrew about $1,200 the day before the attack and paid the money to an attorney the evening of the day of the attack. Defendant offers no plausible explanation of how these witnesses could have learned these facts from a source other than defendant.

Furthermore, Solti, Jones, Weaver, and Bell all testified consistently that defendant instructed them to not hurt his son. Solti and Jones testified that they were to put the child in another room, and Solti added they were to lock the door to the room. Angela testified that one of her attackers immediately took the child to another room, and that after the attack, she had to break down the door to the room where the child was because it was locked.

In finding defendant guilty, the trial court, in addition to the knowledge Solti and Jones possessed which could only have come from defendant, relied on the nature of the events which took place during the attack on Angela. The trial court noted that the attack appeared to be an execution rather than a robbery. This finding comports with the evidence presented in the case. At the time Solti and Jones entered the house, they were aware that Angela was home because Solti had previously knocked on the door and been denied access. They drove all the way from Evanston to Grayslake to get to defendant's house, which was located in a subdivision that was transversed by curving roads. That they made this trip indicates that they were not interested in burglarizing any house, rather, they were targeting the house where Angela resided. Defendant's house was sparsely furnished, so upon looking in through the patio door before breaking in, Solti and Jones would not have seen much to steal. Finally, Solti and Jones left two items of jewelry lying on the floor where the attack occurred.

Substantial evidence existed that supported the trial court's judgment regarding defendant's guilt. Conflicts in the evidence did exist, and the State's primary witnesses were felons and gangmembers. However, it was the trial court's function to resolve these conflicts and assess the credibility of these witnesses. [citation omitted]. Given the substantial evidence indicating guilt, we cannot conclude that defendant was not proven guilty beyond a reasonable doubt.

*People v. Abramov,* No. 2-99-0424, at *7-10.

Abramov argues that the Illinois Appellate Court's determination is an unreasonable application of *Jackson* because "the trial judge, sitting as the trier of fact, did not conclude guilt on the basis that these individuals were credible, or that the trial testimony they gave was truthful." (R. 2-1, Memo. in Support of Section 2254 Petition at 39.) Instead, Abramov argues that "the judge determined that, given what had happened at the Abramovs' Grayslake home on April 12, the home invasion was not a robbery, but an execution. From <u>that</u> conclusion, the trial judge decided that there was only one reason why Solti and Jones would be interested in killing Angela and that was because the defendant had asked them to do so." (*Id.*) (emphasis in original).

In short, Abramov takes umbrage with the fact that the trial court made inferences based on the evidence presented at trial. Under the *Jackson* analysis, however, the State is entitled to every reasonable inference that the trial court can draw from the evidence if the inference has some support in the facts. *See McFowler v. Jaimet,* 349 F.3d 436, 451-52 (7th Cir. 2003). Here, there is substantial evidence that Abramov asked Solti and Jones to kill his wife. Further, Abramov's argument also asks the Court to overlook the trial court's credibility determinations and to determine the witnesses' credibility itself, which is not appropriate under *Jackson* or the AEDPA. *See Jackson,* 443 U.S. at 319 (it is the "responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"); *Miller-El v. Cockrell*, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (state court's factual findings, including credibility determinations, accorded significant deference on collateral review).

In any event, the Court focuses on the Illinois Appellate Court's decision because it was

the last court to make a merits determination on Abramov's *Jackson* claim. *See Sanders v. Cotton,* 398 F.3d 572, 579 (7th Cir. 2005). In analyzing Abramov's argument that the evidence was legally insufficient because Solti, Jones, Bell, and Weaver were impeached and their testimony was biased and inconsistent, the Illinois Appellate Court not only defers to the trial court's credibility determinations, but explains the detailed evidence presented at trial that Abramov asked Jones and Solti to kill his wife and that Abramov had previously asked Bell and Weaver to do the same. The appellate court noted the inconsistencies in the witnesses' testimony, but also highlighted the substantial evidence which corroborated the testimony of these witnesses. The Illinois Appellate Court, for example, analyzed the evidence showing that Weaver, Bell, Solti, and Jones were aware of various details of defendant's life "which would have been difficult, if not impossible, for them to learn from any source other than defendant." *People v. Abramov,* No. 2-99-0424, at \*7.

Abramov's attempt at attacking each of the witnesses's testimony without considering the evidence as a whole misses the point. *See Trejo v. Hulick,* 380 F.3d 1031, 1032 (7th Cir. 2004) (petitioner failed to consider "that the whole might be greater than the sum of the parts"). In other words, Abramov's attempt at characterizing the trial evidence as "slight wisps of circumstantial evidence," cannot be reconciled with the four key witnesses' testimony that Abramov solicited them to murder his wife Angela and the fact that this testimony was corroborated by other evidence, including Angela's own testimony. As such, viewing the evidence in a light most favorable to the State, any rational fact finder could have found the essential elements of solicitation of murder for hire beyond a reasonable doubt. *See Jackson,* 443 U.S. at 319.

Based on the Illinois Appellate Court's detailed and thorough analysis, the Court would be hard-pressed to concluded that its decision lies "well outside the boundaries of permissible differences of opinion." *Woods v. McBride,* 430 F.3d at 816-17.  Instead, the state appellate court's decision is consistent with the facts and circumstances of case, *see Dunlap,* 436 F.3d at 745, and thus Abramov has failed in his burden of establishing that the Illinois Appellate Court applied *Jackson* in an objectively unreasonable manner.  *See Woodford v. Visciotti,* 537 U.S. at 24-25.  The Court thus denies Abramov's insufficiency of the evidence claim.

## III.     Destruction of Evidence – Tape Recordings

In Abramov's last habeas claim, he argues that the trial court erred by failing to sanction the State for losing or destroying tape-recorded conversations and then permitting the State to substitute the live testimony of the police officers.  Respondent argues that Abramov failed to fully and fairly present this claim to the Illinois courts, and thus has procedurally defaulted this claim.

Due to federal-state comity, a petitioner seeking habeas relief in federal court must establish that he has "fully and fairly" presented his claims to the state courts.  *See Bintz,* 403 F.3d at 863; *Dellinger v. Bowen,* 301 F.3d 758, 764 (7th Cir. 2002).  A full and fair presentment requires a petitioner to present both the operative facts and controlling legal principles to the state courts – a mere reference to a constitutional issue is not enough.  *Sanders v. Cotton,* 398 F.3d 572, 580 (7th Cir. 2005); *Chambers v. McCaughtry,* 264 F.3d 732, 737-38 (7th Cir. 2001). The Seventh Circuit has set forth several factors courts consider when making this determination, including whether:  (1) petitioner relied on federal cases that engage in constitutional analysis; (2) petitioner relied on state cases which apply a constitutional analysis

to similar facts; (3) petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; or (4) petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation. *Sanders,* 398 F.3d at 580. "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *See Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (per curiam) (internal citation omitted). Instead, if a petitioner has not fully and fairly presented his habeas claim to the state courts, federal courts are procedurally barred from reviewing the claim on collateral review. *Chambers,* 264 F.3d at 737.

In his second direct appeal, Abramov framed the present habeas claim not only by arguing that it constituted a discovery violation, but also that the discovery violation amounted to a constitutional violation. Specifically, Abramov argued that the "tapes containing Defendant's conversations with the police which were lost or destroyed by the State violated the Defendant's right to a fair trial, right to confront the witnesses against him, and right to due process." (R. 22-1, Respondent's Rule 5 Exs., Ex. F, at 42-43.) Abramov also outlined the facts regarding the police officers' testimony. (*Id.* at 3-5.) Accordingly, Abramov framed his claim in terms so particular as to call to mind specific constitutional rights, namely, that the State violated his "right to a fair trial," "right to confront witnesses," and "right to due process." *See Sanders,* 398 F.3d at 580.

Abramov, however, failed to fully and fairly present his habeas claim in his petition for leave to appeal to the Illinois Supreme Court. In his PLA, Abramov's argument is based entirely on the alleged discovery violations for the loss or destruction of the tapes. (R. 22-1, Respondent's Rule 5 Exs., Ex. I at 19-20.) At no point in his argument does he claim that the

State or the trial court violated his right to a fair trial, right to confront witnesses, or his due process rights. Moreover, Abramov neither cites to any Illinois cases that apply a constitutional analysis to similar facts or to any federal case law. *See Sanders,* 398 F.3d at 580. Although Abramov argues that the substance of his claim was the same on direct appeal and in his petition for leave to appeal, a "somewhat similar" state law claim is not enough for the Court to conclude that he fully and fairly presented his constitutional claim to the Illinois Supreme Court. *See Anderson v. Harless,* 459 U.S. at 6.

Abramov did not fully and fairly present his claims to both the Illinois Appellate Court and Illinois Supreme Court allowing the courts "a meaningful opportunity to consider the substance of the claims that he later present[ed] in his federal challenge." *Bintz,* 403 F.3d at 863; *see also Lewis,* 390 F.3d at 1026 (7th Cir. 2004) ("habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim"). As such, Abramov has procedurally defaulted this habeas claim. Because Abramov has not presented any arguments to overcome this default, *see Coleman,* 501 U.S. at 750, the Court is barred from reviewing this last habeas claim on collateral review.

## CONCLUSION

For these reasons, the Court denies Abramov's petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254(d)(1).

Dated:  May 17, 2006

**ENTERED**

**AMY J. ST EVE**
**United States District Judge**