IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES ex rel. YECHIEL ABRAMOV (#B-71340), | ) ) ) |
| Petitioner, | ) ) |
| v. | ) Case No. 05 C 4795 ) |
| NEDRA CHANDLER, Warden, Dixon Correctional Center, | ) ) ) |
| Respondent. | ) ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Habeas petitioner Yechiel Abramov, by counsel, has filed the present application for a certificate of appealability ("COA") pursuant to 28 U.S.C. § 2253(c)(2) and Federal Rule of Appellate Procedure 22(b). Abramov seeks to appeal the Court's May 17, 2006, Memorandum, Opinion, and Order denying all of his habeas claims under 28 U.S.C. § 2254(d). For the following reasons, the Court denies Abramov's request for a COA.

## BACKGROUND

### I.    Factual Background

On April 12, 1995, Lamar Jones and Leroy Solti broke into Abramov's home in Grayslake, Illinois. At that time, Abramov's wife, Angela, and his son were home and Abramov was at work. Jones and Solti stabbed and shot Angela. The police apprehended Jones and Solti shortly thereafter at which time they told the police that Abramov had hired them to kill his wife.

At trial, Solti testified that he first became acquainted with Abramov when he took his

car in for repairs at the automotive shop where Abramov worked. After receiving an estimate for his car repairs, Solti told Abramov that he could not afford the repairs. Abramov then told Solti not to worry because he had a job for him to do. Abramov consequently asked Solti to kill his wife, Angela.

Two other trial witnesses, Nathan Weaver and Eric Bell, testified that Abramov had previously attempted to hire them to kill Angela. At that time, Abramov and his family were living in an apartment on Cicero Avenue in Chicago, Illinois. Although neither Weaver nor Bell intended to kill Angela, they let Abramov believe that they were going to kill her because Abramov gave them money. At one point, Weaver and Bell staged a robbery with Abramov's cooperation where they were going to kill Angela. They did not kill her, however, but took Abramov's money instead.

After his second bench trial before the Circuit Court of Lake County, Illinois, the state court judge convicted Abramov of one count each of solicitation for murder for hire, attempted first-degree murder, and aggravated battery with a firearm. The Circuit Court sentenced Abramov to two concurrent 29-year terms of imprisonment for solicitation of murder for hire and attempted first degree murder. The trial court also sentenced Abramov to a consecutive 6-year term for aggravated battery.

## II.     Federal Court Procedural Background

On August 19, 2005, Abramov filed his habeas petition pursuant to 28 U.S.C. § 2254(d) raising the following claims: (1) the State violated his rights to due process, to a fair trial, and to confront witnesses when the State lost or destroyed tape recordings of telephone conversations between Abramov and law enforcement officers, but allowed the police officers to testify about

the content of the tape recordings at trial; (2) the trial court violated his rights under the Confrontation Clause of the Sixth Amendment when the court granted the State's motion *in limine* to bar cross-examination of Solti concerning his conversation with his attorney; and (3) the State did not prove him guilty beyond a reasonable doubt.

In denying Abramov's habeas petition, the Court reached the merits of Abramov's Confrontation Clause and sufficiency of the evidence claims concluding that the Illinois Appellate Court's decision was not an unreasonable application of clearly established Supreme Court law. *See Williams v. Taylor*, 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Dunlap v. Hepp,* 436 F.3d 739, 741 (7th Cir. 2006). As to Abramov's destruction of evidence claim, the Court concluded that he did not fully and fairly present both the operative facts and controlling legal principles to the Illinois Supreme Court in his petition for leave to appeal. *See Bintz v. Bertrand,* 403 F.3d 859, 863 (7th Cir. 2005). As such, Abramov procedurally defaulted this claim, *see Lewis v. Sternes,* 390 F.3d 1019, 1026 (7th Cir. 2004), and did not argue or establish an exception to overcome this procedural default. *See Coleman v. Thompson,* 501 U.S. 729, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).

## LEGAL STANDARD

Under 28 U.S.C. § 2253, a habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003). "The purpose of requiring a certificate of appealability is to conserve judicial resources by screening out clearly unmeritorious appeals." *Buie v. McAdory,* 322 F.3d 980, 981 (7th Cir. 2003). A habeas petitioner is entitled to a certificate of appealability only if he can

make a substantial showing of the denial of a constitutional right. *Miller-El,* 537 U.S. at 336; *Cosby v.*

*Sigler,* 435 F.3d 702, 708 (7th Cir. 2006). Under this standard, Abramov must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). While a petitioner seeking a COA need not demonstrate that he will prevail on appeal, he "must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El,* 537 U.S. at 338 (internal quotation marks and citation omitted). The Court's "determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Id.* at 336.

## ANALYSIS

### I.    Destruction of Evidence

#### A.    Actual Innocence

Previously, Abramov claimed that he was innocent of soliciting Jones, Solti, Bell, and Weaver to murder his wife. For the first time in his COA application, Abramov attempts to develop an "actual innocence" argument. Although claims of actual innocence are not cognizable as stand alone claims on federal habeas review, actual innocence relates to the "fundamental miscarriage of justice exception" providing a gateway for the Court to review Abramov's procedurally defaulted claim concerning the destruction of tape recordings. *See Herrera v. Collins,* 506 U.S. 390, 400, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).

To establish actual innocence, a petitioner must support his allegations "with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *see also Gomez v. Jaimet,* 350 F.3d 673, 679 (7th Cir. 2003). The petitioner must also establish that "it was more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup,* 513 U.S. at 327. "To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes v. Battaglia,* 403 F.3d 935, 938 (7th Cir. 2005). Because this type of evidence is unavailable in the vast majority of cases, actual innocence claims are rarely successful. *See Schlup,* 513 U.S. at 324.

Here, Abramov has failed to present any new evidence that was not presented at trial to establish his actual innocence claim. Indeed, Abramov does not point to any evidence – new or old – to support this claim. Accordingly, the Court cannot reach the merits of his procedurally defaulted claim because Abramov has failed in establishing the miscarriage of justice exception to overcome his procedural default. *See Coleman,* 501 U.S. at 750.

**B.     Procedurally Defaulted Destruction of Evidence Claim**

In cases where a district court denies a habeas claim on procedural grounds without reaching the merits of the underlying constitutional claim, a certificate of appealability should issue if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it

debatable whether the district court was correct in its procedural ruling. *See Slack,* 529 U.S. at 485.

Here, the dispositive question before the Court is whether jurists of reason would conclude that its dismissal of Abramov's destruction of evidence claim based on procedural grounds was debatable. "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Lewis,* 390 F.3d at 1026. To properly assert a federal claim to the state courts, Abramov was required to "fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge." *Bintz,* 403 F.3d at 863.

In his petition for leave to appeal the Illinois Supreme Court, Abramov's argument was based solely on the alleged discovery violations for the loss or destruction of the tapes. At no point in his argument did he claim that the State or the trial court violated his right to a fair trial, to confront witnesses, or due process. In fact, there is not even a hint that his claim was anything other than a claim based on discovery violations. In light of the fact that there was no indication that Abramov was making constitutional claims in his petition for leave to appeal, this is not a matter that would be subject to debate among reasonable jurists. The Court thus denies Abramov's request for a certificate of appealability as to his destruction of evidence claim.

## II.     Confrontation Clause

Next, Abramov asserted in his habeas petition that the Illinois Appellate Court's decision concerning his Confrontation Clause claim was an unreasonable application of clearly established Supreme Court law because the Illinois court concluded that the attorney-client

privilege trumped his constitutional right to confront his accusers. Specifically, the Illinois

Appellate Court stated:

> [T]he right to confront one's accusers does not take precedence over the attorney-client privilege. Like the right to confrontation, the attorney-client privilege is designed "to promote the judicial process itself." Thus, unlike some privileges deemed to be of secondary importance, the attorney-client privilege does not give way to a defendant's right under the confrontation clause.

*People v. Abramov,* No. 2-99-0424, at *18 (2ᵈ Dist. Apr. 24, 2001) (unpublished order) (internal

citations omitted). Abramov, however, also admitted that the "United States Supreme Court has

not yet addressed the precise issue raised here – a clash between a criminal defendant's

Constitutional rights and an assertion of the attorney-client privilege." (R. 2-1, Memo. in

Support of Section 2254 Petition, at 39.)

Indeed, the Court did not find any Supreme Court case law directly on point with

Abramov's claim. Accordingly, the Court concluded that Abramov's reliance on Seventh and

Ninth Circuit decisions could not be the basis for a finding that the Illinois Appellate Court's

decision involved an unreasonable application of clearly established federal law as determined

by the Supreme Court. *See Sweeney v. Carter,* 361 F.3d 327, 333-34 (7ᵗʰ Cir. 2004); *Young v.

Walls,* 311 F.3d 846, 849 (7ᵗʰ Cir. 2002).

In his COA application, Abramov argues that clearly established Supreme Court

precedent recognizes "that persons charged with crimes have a Constitutional right to present a

defense, a right that evidentiary rules – including evidentiary privileges – cannot stymie." (R.

35-1, Memo. in Support of Request for COA, at 4.) Abramov then cites to the following

Supreme Court authority. *See Green v. Georgia,* 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738

(1979); *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973); *see*

*also Holmes v. South Carolina*, ____ U.S. ____, 126 S.Ct. 1727, ___ L.Ed.2d ___ (2006).

Although these cases discuss the contours of the Confrontation Clause in the context of

evidentiary rules, they do not specifically address the right to confront one's accusers and the

attorney-client privilege.

Because there is no Supreme Court authority supporting his claim, it cannot be debatable

among reasonable jurists that the Illinois Appellate Court's decision was an unreasonable

application of clearly established Supreme Court law. The Court denies Abramov's request for a

COA as to this claim.

### III.    Sufficiency of the Evidence

Last, Abramov contends that he has met the statutory standard for the issuance of a COA

on the issue of whether the evidence presented at trial was legally sufficient to support his

convictions under *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

To recap, although Abramov admits that the State's four chief witnesses – Solti, Jones, Weaver,

and Bell – all testified that Abramov personally solicited them to kill his wife, Abramov argues

that the evidence at trial was legally insufficient because these witnesses were impeached,

biased, and their testimony was inconsistent. In short, the essence of Abramov's argument in his

habeas petition was that the trial judge made impermissible inferences based on the evidence

presented at trial. In his application for a COA, Abramov argues that he was not taking umbrage

with the fact that the trial court made inferences, instead, he argues that these inferences were not

supported by the trial evidence.

In analyzing Abramov's argument that the evidence was legally insufficient because

Solti, Jones, Bell, and Weaver were impeached and their testimony was biased and inconsistent,

the Illinois Appellate Court not only deferred to the trial court's credibility determinations, but explained the detailed evidence presented at trial that Abramov asked Jones and Solti to kill his wife and that Abramov had previously asked Bell and Weaver to do the same. *See People v. Abramov,* No. 2-99-0424, at *7-10. The Illinois Appellate Court noted the inconsistencies in the witnesses' testimony, but also highlighted the substantial evidence which corroborated the testimony of these witnesses. The Illinois Appellate Court for example analyzed the evidence showing that Weaver, Bell, Solti, and Jones were aware of various details of defendant's life "which would have been difficult, if not impossible, for them to learn from any source other than defendant." *People v. Abramov,* No. 2-99-0424, at *7. Based on the Illinois Appellate Court's detailed and thorough analysis, the Court concluded that the Illinois court's decision did not lie "well outside the boundaries of permissible differences of opinion." *Woods v. McBride,* 430 F.3d 813, 816-17 (7th Cir. 2005) (quoting *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir. 2002)).

Abramov's argument that there was no factual basis for his conviction simply cannot be reconciled with the four key witnesses' testimony that Abramov solicited them to murder his wife, Angela, and the fact that this testimony was corroborated by other evidence, including Angela's own testimony. Under the *Jackson v. Virginia* standard, this issue does not provide for debate among reasonable jurists, and thus should not proceed further. *See id.* at 319 ("whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). Therefore, the Court denies Abramov's request for a COA as to this claim.

## CONCLUSION

For these reasons, the Court denies Abramov's application for a certificate of

appealability pursuant to 28 U.S.C. § 2253(c)(2) and Federal Rule of Appellate Procedure 22(b).

Dated:  June 29, 2006

**ENTERED**

**AMY J. ST. EVE**
**United States District Judge**